UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 15-20615-CIV-MORENO/O'SULLIVAN

YENISEY PEREZ and CINTIA CINI,

      Plaintiffs,

v.

ANASTASIA M. GARCIA, P.A.
and ANASTASIA M. GARCIA,

      Defendants.

_____/

## REPORT AND RECOMMENDATION

THIS MATTER comes before the Court on the Defendants' Motion for Final

Summary Judgment (DE# 35, 6/9/15) and the Plaintiffs' Motion for Partial Summary

Judgment (DE# 38, 6/11/15). This matter was referred to the undersigned pursuant to

28 U.S.C. § 636(b) for a report and recommendation. See Order of Referral to

Magistrate Judge O'Sullivan for All Pretrial Proceedings (DE# 41, 6/23/15). Having

reviewed the applicable filings and the law, the undersigned respectfully

RECOMMENDS that the Defendants' Motion for Final Summary Judgment (DE# 35,

6/9/15) be **DENIED**[1] and that the Plaintiffs' Motion for Partial Summary Judgment be

**GRANTED in part and DENIED in part** for the reasons stated herein.

---

[1] The defendants also filed an untimely second motion for summary judgment.
See Defendants' Response to Plaintiffs' Motion for Partial Summary Judgment and
Cross-Motion for Summary Judgment (DE# 46, 6/29/15). On June 6, 2015, the
undersigned struck the defendants' second summary judgment motion for failure to
comply with the Local Rules. See Order (DE# 51, 6/30/15).

**BACKGROUND**

On February 23, 2015, Yenisey Perez and Cintia Cini (collectively, "plaintiffs") filed their First Amended Complaint against Anastasia M. Garcia P.A. and Anastasia M. Garcia (collectively "defendants"). See First Amended Complaint under 29 U.S.C. 201-216 Overtime Wage Violations and Retaliation under 29 U.S.C. 215(A)(3) (DE# 9, 2/23/15). (hereinafter "First Amended Complaint"). The First Amendment Complaint alleged two causes of action against the defendants: federal overtime wage violation (Count I) and retaliation (Count II).[2]

On June 9, 2015, the defendants moved for summary judgment in their favor on the plaintiffs' Fair Labor Standards Act ("FLSA") claims. See Defendants' Motion for Final Summary Judgment (DE# 35, 6/9/15). The plaintiffs filed their response and a statement of material facts in opposition to the defendants' motion on June 25, 2015. See Plaintiffs' Response in Opposition to Defendants' Motion for Final Summary Judgment (DE# 43, 6/21/15); Statement of Material Facts in Opposition to Defendants' Motion for Final Summary Judgement (DE# 44, 6/25/15). The defendants filed their reply on July 6, 2015. See Defendants' Reply to Response to Motion for Final Summary Judgment and Statement of Material Facts (DE# 53, 7/6/15).

On June 11, 2015, the plaintiffs moved for partial summary judgment and filed a statement of material facts in support of their summary judgment motion. See Plaintiffs' for Motion for Partial Summary Judgment (DE# 38, 6/11/15); Statement of Material

---

[2] On April 20, 2015, the Court entered an Order bifurcating the plaintiffs' overtime claims from their retaliation claims. See Order (DE# 26, 4/20/15).

2

Facts in Support of Plaintiffs' Motion for Partial Summary Judgment (DE# 39, 6/11/15).

The defendants filed their response to both documents on June 29, 2015. See

Defendants' Response to Plaintiffs' Motion for Partial Summary Judgment and Cross-

Motion for Summary Judgment (DE# 46, 6/29/15);[3] Defendants' Response to Plaintiffs

Statement of Material Facts (DE# 47, 6/29/15). The plaintiffs filed their reply on July 2,

2015. See Plaintiffs' Reply to Defendants' Response to Motion for Partial Summary

Judgment (DE# 52, 7/2/15).

This matter is ripe for adjudication.

## FACTS[4]

Defendant Anastasia M. Garcia is an attorney and the sole owner of defendant

Anastasia M. Garcia, P.A. (hereinafter "law firm"). Ms. Garcia's practice consisted

primarily of family law and family mediation. See Deposition of Anastasia M. Garcia

(DE# 39-5 at 5, 6/11/15). It also included some court-appointed guardianship work. Id.

She was often out of the office for the entire day and required someone to manage the

office. During the relevant time period, the law firm had four employees: Ms. Garcia,

associate attorney Frank Pumarejo-Martin ("Mr. Martin") and plaintiffs Yenisey Perez

and Cintia Cini.

---

[3] As noted earlier, the undersigned struck the portion of the defendants' response seeking to assert a second motion for summary judgment. See Order (DE# 51, 6/30/15).

[4] Some of the documents filed by the parties contain multiple page numbers. For clarity and consistency, the undersigned will use the page numbers automatically assigned by the Court's CM/ECF system, which appear on the upper right hand corner of each document, when citing to the record (including deposition transcripts).

The defendants were "employers" of plaintiffs Yenisey Perez and Cintia Cini under the FLSA. See Defendants' Response to Plaintiffs Statement of Material Facts (DE# 47 at ¶1, 6/29/15). The defendants did not have a time recording system in place during the plaintiffs' employment at the firm.[5] During the relevant time period, Ms. Perez was paid a fixed weekly salary of $575 and Ms. Cini reported her hours to Ms. Perez using the "honor system." Deposition of Cintia Cini (DE# 35-11 at 35, 6/9/15).

**I.      Plaintiff Yenisey Perez**

**a.     Ms. Perez' Employment with the Defendants**

Ms. Perez worked for the defendants from on or about February 25, 2010[6] through on or about February 14, 2015.[7] Ms. Perez is claiming overtime damages from February 17, 2012 through February 14, 2015. See Affidavit of Yenisey Perez (DE# 44-3 at ¶11, 6/11/15).

**i)     Hours Worked**

At the beginning of her employment, the defendants told Ms. Perez that she would be working from 9:00 AM to 5:00 PM. See Affidavit of Yenisey Perez (DE# 44-3

---

[5] Ms. Garcia testified that for the last two days of the plaintiffs' employment she "got a clock to keep track of the time," but the plaintiffs "refused to use it." Deposition of Anastasia M. Garcia (DE# 39-5 at 92, 6/11/15).

[6] In their statement of undisputed facts, the defendants assert that Ms. Perez began working for the law firm in March 2010. See Defendants' Motion for Final Summary Judgment (DE# 35 at 2, 6/9/15). This fact is not material to the adjudication of the summary judgment motions.

[7] The parties dispute whether Ms. Perez quit her job at the firm or was constructively discharged by the defendants. Because the overtime claims have been bifurcated from the retaliation claims, this factual dispute is not material to the instant summary judgment motions.

at ¶2, 6/11/15). However, "[d]aily and regularly, [Ms. Perez] would receive texts and calls from Defendants which [she] was required to respond to from approximately 7:00 a.m., despite the fact that [she] was only required to be in the office at 9:00 a.m." Affidavit of Yenisey Perez (DE# 44-3 at ¶2, 6/11/15). In the mornings before work, Ms. Perez would sometimes go to the pharmacy to pick up medicines for Ms. Garcia or to Ms. Garcia's house at her request. See Deposition of Yenisey Perez (DE# 35-4 at 4, 6/9/15). Approximately twice a month, Ms. Perez would meet the dog groomer at Ms. Garcia's home and would also feed one of the dogs or give the dog medicine. Id. at 5.[8]

During her employment at the firm, Ms. Perez always worked through her lunch break. See Deposition of Yenisey Perez (DE# 35-4 at 7, 6/9/15).[9] For instance, she often assisted Ms. Garcia or Mr. Martin and would sometimes go to Ms. Garcia's house to give her dog medicine. Id. A few times, Ms. Perez picked up Ms. Garcia's father because his car broke down. Id. She drove him to a restaurant and an hour later took him to the mechanic. Id.[10]

Ms. Perez usually left the office between 5:40 PM and 6:20 PM from 2012

---

[8] The defendants dispute that Ms. Perez would regularly take care of Ms. Garcia's dogs. According to Ms. Garcia, Ms. Perez took care of her dogs occasionally and on those occasions, Ms. Garcia would pay Ms. Perez $50.00 to do so. See Deposition of Anastasia M. Garcia (DE# 39-5 at 96-97, 6/11/15).

[9] According to Ms. Garcia, Ms. Perez and Ms. Cini would each receive an hour lunch break. Deposition of Anastasia M. Garcia (DE# 39-5 at 31-32, 6/11/15).

[10] According to Ms. Garcia, Ms. Perez did not run any errands for her father or drive him to a restaurant. See Deposition of Anastasia M. Garcia (DE# 39-5 at 97, 6/11/15).

through 2014. <u>See</u> Deposition of Yenisey Perez (DE# 35-4 at 10-11, 6/9/15).[11]

Beginning in 2015, Ms. Perez would try to leave the office by 5:00 PM. <u>Id.</u> at 11. Ms.

Perez would not go directly home after work. <u>Id.</u> at 5. She would often go to the bank

for Ms. Garcia[12] or to run other errands for Ms. Garcia. <u>Id.</u> at 3. Approximately three to

four times per week, Ms. Perez would go to Ms. Garcia's house after work to take care

of Ms. Garcia's dogs. <u>Id.</u> at 3, 10-11.[13] Ms. Perez "would [continue to] receive texts and

calls from Defendants . . . until approximately 8:00-10:00 p.m." Affidavit of Yenisey

Perez (DE# 44-3 at ¶2, 6/11/15).

Approximately three or four times during her employment, Ms. Perez took Mr.

Martin from his home to the airport or from work to the airport. <u>See</u> Deposition of Frank

Martin (DE# 47-2 at 14-15, 6/29/15); Deposition of Yenisey Perez (DE# 35-4 at 6,

6/9/15). This took place during work hours and Ms. Perez did not receive extra

compensation for taking Mr. Martin to the airport. <u>See</u> Deposition of Yenisey Perez

(DE# 35-4 at 6, 6/9/15). On one occasion, Ms. Perez had to pick up Ms. Garcia's father

from the airport after 5:00 PM. <u>See</u> Deposition of Yenisey Perez (DE# 35-4 at 17,

---

[11] The defendants dispute that Ms. Perez worked past 5:00 PM. Ms. Garcia testified that Ms. Perez' schedule was 9:00 AM to 5:00 PM. Deposition of Anastasia M. Garcia (DE# 39-5 at 25, 6/11/15).

[12] Ms. Perez would sometimes make deposits at the bank during working hours, but most of the time she would go to the bank after 5:00 PM. <u>See</u> Deposition of Yenisey Perez (DE# 35-4 at 17, 6/9/15).

[13] According to Ms. Garcia, Ms. Perez did not go to her house after work to take care of her dogs or perform any additional duties at Ms. Garcia's home after work. <u>See</u> Deposition of Anastasia M. Garcia (DE# 39-5 at 96-97, 6/11/15).

6/9/15).

According to Ms. Garcia, Ms. Perez worked on Saturday on only one or two occasions. See Deposition of Anastasia M. Garcia (DE# 39-5 at 25-26, 6/11/15). On both occasions, Ms. Perez arrived at the office at 9:00 AM and left at noon. Id. at 26. Ms. Perez testified that approximately four to six times during her employment, she went to Costco on Saturdays to make purchases for the firm or for Ms. Garcia's personal use. See Deposition of Yenisey Perez (DE# 35-4 at 30, 6/9/15).[14] This task would take approximately three to four hours because Ms. Perez would have to drop off some of the purchases at Ms. Garcia's home before taking the remaining items to the office. Id. at 31.

Between 2012 and 2014, Ms. Perez worked on approximately six yearly fund raisers for the firm where she would sometimes work until 10:30 PM or 11:00 PM. See Deposition of Yenisey Perez (DE# 35-4 at 18, 6/9/15). Ms. Perez was not paid extra compensation for doing these tasks. Id. at 6, 18.[15]

### ii)   Compensation and Gifts

Initially, Ms. Perez' pay rate was approximately $11.00 per hour. In June or July, 2010, Ms. Perez' pay rate was increased to $12.00 per hour. "When [Ms. Perez] was an hourly paid employee and worked over 40 hours in a week, [she] was paid straight time

---

[14] According to Ms. Garcia, she gave the plaintiffs a Costco card, but they never bought food for the office at Costco. See Deposition of Anastasia M. Garcia (DE# 39-5 at 97-98, 6/11/15).

[15] In her deposition, Ms. Perez stated that the "Kids Side" fund raiser was not part of her claim because she enjoyed doing that work. See Deposition of Yenisey Perez (DE# 35-4 at 35, 6/9/15).

and was not paid [her] overtime rate." Affidavit of Yenisey Perez (DE# 44-3 at ¶2, 6/11/15); see also Deposition of Anastasia M. Garcia (DE# 39-5 at 31, 6/11/15).

At some point,[16] Ms. Garcia approached Ms. Perez and asked her if she "would prefer . . . a dollar increase in [her] hourly rate or . . . to be paid $575.00 weekly." Affidavit of Yenisey Perez (DE# 39-2 at ¶3, 6/11/15).[17] Ms. Perez agreed to a fixed weekly salary. According to Ms. Perez, the defendants did not tell her that the new fixed salary would cover all of the hours Ms. Perez worked, including any overtime. Id.[18] Ms.

---

[16] One of Ms. Perez' affidavits attests that this conversation took place "on or about 2012-2013." See Affidavit of Yenisey Perez (DE# 39-2 at ¶3, 6/11/15). However, in another affidavit, Ms. Perez admits that "the payroll records reflect that on or about March 18, 2011, PEREZ began earning a salary of $575.00 per week." See Affidavit of Yenisey Perez (DE# 44-3 at ¶1, 6/11/15).

[17] During her deposition, Ms. Perez testified as follows:

Q. Were you always paid your $575 salary?

A. Yes. Well, at the beginning when I started working for [Ms. Garcia], I was hourly. And like Miss Cini, I used to do overtime and not get paid for that and I would get paid regular rate. And I believe the accountant brought it up to her attention and that is why I became salary.

Deposition of Yenisey Perez (DE# 35-4 at 25, 6/9/15).

[18] According to Ms. Garcia, Ms. Perez' weekly salary was compensation for all hours worked including hours in excess of forty hours:

When a salary was offered to PEREZ, it was agreed and understood that the salary was intended to pay her for all hours worked each week. She received the same salary whether she worked less than 40 hours or more than 40 hours per week. That was the understanding reached with PEREZ. She agreed to the salary and continued to work different hours every week in exchange for the salary of $575.00 per week.

Affidavit of Anastasia M. Garcia (DE# 35-15 at ¶2, 6/9/15).

Perez believed that her salary of $575.00 per week was for forty hours of work, even though Ms. Perez was already working in excess of forty hours. <u>See</u> Deposition of Yenisey Perez (DE# 35-4 at 25-26, 31 6/9/15). Shortly after Ms. Perez began receiving this new salary, her workload also increased. <u>See</u> Affidavit of Yenisey Perez (DE# 44-3 at ¶2, 6/11/15). Ms. Perez did not complain to Ms. Garcia that Ms. Garcia had breached their agreement by making Ms. Perez work more than forty hours per week. <u>See</u> Deposition of Yenisey Perez (DE# 35-4 at 27, 6/9/15).

During her employment with the defendants, Ms. Perez received several gifts. In October 2013, Ms. Garcia gave Ms. Perez a gift of approximately $1,000.00. <u>See</u> Deposition of Yenisey Perez (DE# 35-4 at 7, 6/9/15). Beginning in 2014, on certain weeks when "collections were good," Ms. Garcia would give Ms. Perez an additional cash payment of $100. <u>Id.</u> at 6. Ms. Garcia also paid for two semesters of Ms. Perez' college tuition and gave her a bonus of approximately $500 when Ms. Perez needed to change all the locks in her home. <u>Id.</u> Ms. Perez "would [receive] a Christmas bonus every year, and [Ms. Garcia] paid her cell phone, and [i]Pad service" one year. <u>See</u> Deposition of Anastasia M. Garcia (DE# 39-5 at 30, 6/11/15). In 2014, Ms. Perez' Christmas bonus was $1,500. <u>Id.</u>

### iii)   Job Duties

At the beginning of her employment, Ms. Perez met with Ms. Garcia and Mr. Martin. Ms. Perez was told she was being hired as a secretary[19] and that her job duties

---

[19] The parties dispute whether Ms. Perez worked as a secretary or as an administrative assistant/manager. During his deposition, Mr. Martin testified that Ms. Perez' title when hired was that of "assistant" because "[s]he didn't have any legal

would include: "answering the phone and other secretarial work, inputting payroll information provided to [her] by Defendants, inputting the clients' responses to discovery requests as per the instructions of Defendants, and inputting payments received by the clients over the course of the month." Affidavit of Yenisey Perez (DE# 39-2 at ¶2, 6/11/15).[20] Ms. Perez did not receive any special training or attend any classes in preparation for her employment with the defendants.

Ms. Perez' job duties included routine secretarial tasks under the constant direction of the defendants. See Affidavit of Yenisey Perez (DE# 39-2 at ¶4, 6/11/15). She was responsible for scheduling hearings, mediations and depositions at the instruction of the defendants. Id. at ¶5. Ms. Cini would often overhear Ms. Garcia and Mr. Martin guiding Ms. Perez "on tasks which [Ms. Perez] was required to complete." Affidavit of Cintia Cini (DE# 39-3 at ¶11, 6/11/15). Ms. Cini would also overhear Ms. Perez telling clients on the telephone "that she would need to check with Defendant Garcia about her availability and would get back to them regarding same." Id.

experience to categorize her as a legal assistant when she first started." Deposition of Frank Martin (DE# 47-2 at 5, 6/29/15). According to Ms. Garcia, Ms. Perez' "position initially was just to do secretarial work, and it evolved into [Ms. Perez] basically running the office." Deposition of Anastasia M. Garcia (DE# 39-5 at 4, 6/11/15). Ms. Garcia attests that by the time Ms. Perez was earning a weekly salary, she was Ms. Garcia's "executive assistant or [the] manager for the [l]aw [f]irm." Affidavit of Anastasia M. Garcia (DE# 47-1 at ¶4, 6/29/15). The Eleventh Circuit has stated that an employee's job title is not determinative of his or her exempt status. See Gregory v. First Title of Am., Inc., 555 F.3d 1300, 1307 (11th Cir. 2009) (per curiam) (noting that "a job title alone is insufficient to establish the exempt status of an employee."). Accordingly, Ms. Perez' job duties will be addressed in detail in the analysis portion of this Report and Recommendation.

[20] The amount of discretion and autonomy Ms. Perez had in performing her job duties is also disputed.

10

According to Ms. Garcia, Ms. Perez' job duties included:

Collections from the clients, sending the bills to the clients, scheduling depositions, finding the court reporter, dealing with the building manager, ensuring that [the] back-up system was operating. She would be responsible to switch off the [computer] back-up tape.

***

[D]ealing with [the] computer technician, assisting with discovery, ensuring that the clients would pay the costs that would be required for any given thing whether court reporters, or deliveries or service of process, arranging for service of process, arranging for payment plans for clients that needed them, dealing with selecting health insurance for the office, dealing with the bank, whether it was processing the deposits, dealing with the bank officer, on Fridays making sure that the checks got printed and that everybody got paid.

She was the direct contact with the accountant, inserting the information into Quickbooks, whether it be for deposits or issuing checks. She would sometimes answer the phone and schedule appointments or reschedule them, and other things.

Deposition of Anastasia M. Garcia (DE# 39-5 at 34-35, 6/11/15). With respect to assisting with discovery, Ms. Perez "would mainly . . . print out . . . and gather the documents if they were forwarded [by email], gather them from the client if a client came to drop them off, things of that nature." Id. at 36.

Ms. Perez set up the firm's filing system and determined when closed files would go to storage or remain in the office. See Deposition of Anastasia M. Garcia (DE# 39-5 at 40-41, 6/11/15). Mr. Martin would also assign tasks to Ms. Perez and Ms. Cini to complete. See Deposition of Frank Martin (DE# 47-2 at 12, 6/29/15). Ms. Perez was the only person in the office with the mail key and would distribute the mail. See Deposition of Anastasia M. Garcia (DE# 39-5 at 51, 6/11/15); Affidavit of Anastasia M. Garcia (DE# 47-1 at ¶18, 6/29/15).

According to Ms. Garcia, Ms. Perez "was delegated the job of training, supervising and overseeing the office assistant CINI." Affidavit of Anastasia M. Garcia (DE# 47-1 at ¶6, 6/29/15); <u>see also</u> Deposition of Anastasia M. Garcia (DE# 39-5 at 36, 6/11/15). However, Ms. Cini did not view Ms. Perez as her supervisor and Ms. Perez did not have the authority to reprimand or discipline her. <u>See</u> Affidavit of Cintia Cini (DE# 39-3 at ¶8, 6/11/15). If Ms. Cini needed to take a vacation day or sick day, she would ask Ms. Garcia.

Mr. Martin testified that while Ms. Perez was "in charge of" Ms. Cini, Ms. Perez did not direct the work of two or more employees at the same time. <u>See</u> Deposition of Frank Martin (DE# 47-2 at 20-21, 6/29/15). He also testified that Ms. Perez did not have the authority to hire or fire another employee. <u>Id.</u> at 21; <u>see also</u> Affidavit of Yenisey Perez (DE# 39-2 at ¶¶9-10, 6/11/15); Deposition of Anastasia M. Garcia (DE# 39-5 at 37, 6/11/15).

Before Ms. Cini was hired, there was another assistant at the office, Natalia Rodriguez. Ms. Perez did not supervise Ms. Rodriguez' work. <u>See</u> Deposition of Yenisey Perez (DE# 35-4 at 7-8, 6/9/15).

Ms. Perez would send bills to the firm's clients from her email address at the end of the month. <u>See</u> Deposition of Anastasia M. Garcia (DE# 39-5 at 42, 6/11/15). Many of the firm's clients paid with credit cards. <u>See</u> Deposition of Yenisey Perez (DE# 35-4 at 10, 6/9/15). Ms. Perez would take their credit card information over the telephone or in person. <u>Id.</u> Ms. Garcia, Ms. Perez and Ms. Cini had an application on their cellular telephones that allowed them to accept credit card payments on behalf of the firm. <u>Id.</u>;

<u>see</u> <u>also</u> Affidavit of Anastasia M. Garcia (DE# 47-1 at ¶14, 6/29/15).

Clients would contact Ms. Perez regarding payments. "If [the clients] couldn't pay [their bills in full], they would [enter into] payment plans." <u>See</u> Deposition of Anastasia M. Garcia (DE# 39-5 at 42, 6/11/15). Ms. Perez would then calendar the payment plans and follow up with the clients at her discretion. <u>Id.</u> Ms. Perez would call clients who owed the firm money and make sure they paid. <u>See</u> Deposition of Yenisey Perez (DE# 35-4 at 18, 6/9/15).

According to Ms. Perez, she would not negotiate with the clients the amount they owed:

Q. And would you negotiate with the clients how much they could pay?

A. No. I would ask the client what can you pay and then I would run it by [Ms. Garcia] and make sure it was okay with her. I never had the authority to tell a client, that's okay, I'll take $100 off your bill and just pay me $200.

*** 

Q. . . . Did you have authority to work out a payment plan with the client in order for him to pay X-amount every month?

A. No. Usually the payment plans were always told by Miss Garcia to me and then I would tell the client.

Q. So you would have to speak to the client, find out how much he could pay and then you would tell Miss Garcia about it?

A. Yes.

Q. And she would have to approve it?

A. She had to tell me no, I approve or no, say this or no, say that and then I would get back to the client and say whatever she said.

Id. at 18.[21] According to Ms. Perez, she would not make recommendations to Ms.

Garcia concerning client bills. Id. at 31.

Ms. Perez would communicate with the building manager, but it was always

about issues or concerns raised by Ms. Garcia. See Deposition of Yenisey Perez (DE#

35-4 at 31, 6/9/15).[22] Similarly, Ms. Perez never took it upon herself to call the computer

technician. Id. at 32.[23] If there was a computer problem, she would call or text Ms.

Garcia first and then contact the technician. Id.

_____

[21] The parties dispute the amount of authority Ms. Perez had with respect to collecting money from the firm's clients. Mr. Martin testified that Ms. Perez had the authority to approve payment plans for clients that owed money to the firm during the last two years of her employment with the defendants. See Deposition of Frank Martin (DE# 47-2 at 26-28, 6/29/15). According to Mr. Martin, Ms. Perez had the authority to tell clients who owed money to the firm that they could pay the firm in monthly installments. Id. at 27. Ms. Garcia similarly testified that Ms. Perez "determined what payment plans clients would enter into. She collected all the payments [and] processed them." Deposition of Anastasia M. Garcia (DE# 39-5 at 39, 41, 6/11/15); see also Affidavit of Anastasia M. Garcia (DE# 47-1 at ¶¶8-9, 6/29/15) (attesting that "PEREZ was delegated the duty of directly dealing with the client's [sic] of the law firm and had discretion and independent judgment to arrange payment of attorney's fees and costs to the firm, as well as . . . make recommendations.").

[22] Ms. Garcia testified that Ms. Perez "was solely responsible [for] dealing with the building manager on all office related issues, such as issues related to the air conditioning in the office, access to the building when the intercom did not work, issues with parking for clients, and access to the building in general." Affidavit of Anastasia M. Garcia (DE# 47-1 at ¶21, 6/29/15).

[23] The parties dispute this fact. According to Ms. Garcia, Ms. Perez "was solely responsible with dealing with the computer technician . . . on all computer related issues, as [Ms. Garcia] could not do so. [Ms. Perez] had discretion to make any necessary decisions as the office manager." Affidavit of Anastasia M. Garcia (DE# 47-1 at ¶10, 6/29/15). She also testified that Ms. Perez "determined and recommended the family law software [the firm] should use and met with the professionals who were trying to pitch it." Deposition of Anastasia M. Garcia (DE# 39-5 at 39, 6/11/15). Ms. Perez would also contact the software developer if there was a problem with the family law software. Id. at 41.

According to Mr. Martin, Ms. Perez had discretion when ordering office supplies.[24] She would not ask permission to place an order for supplies, she would just do it. Deposition of Frank Martin (DE# 47-2 at 22, 6/29/15). Mr. Martin could not recall any other areas in which Ms. Perez had discretion. Id. Ms. Perez was responsible for keeping an inventory of office supplies. See Affidavit of Anastasia M. Garcia (DE# 47-1 at ¶5, 6/29/15). She determined where to buy office supplies, what coffee maker the firm purchased and what copier the firm used. See Deposition of Anastasia M. Garcia (DE# 39-5 at 39, 6/11/15); Affidavit of Anastasia M. Garcia (DE# 47-1 at ¶17, 6/29/15). Ms. Perez testified that while she was responsible for ordering the stationery for the office, she would always consult with Ms. Garcia. See Deposition of Yenisey Perez (DE# 35-4 at 32-33, 6/9/15).

Mr. Martin testified that Ms. Perez was responsible for "meet[ing] with the [health] insurance agent and basically decide what insurance [was] best for [the firm]." Deposition of Frank Martin (DE# 47-2 at 23, 6/29/15). However, the person who made the ultimate decision in selecting an insurer was Ms. Garcia based on Ms. Perez' recommendation. Id.[25]

---

[24] Ms. Garcia also testified that Ms. Perez was responsible for ordering the office supplies. See Deposition of Anastasia M. Garcia (DE# 39-5 at 14-15, 6/11/15).

[25] The parties dispute Ms. Perez' role in selecting the firm's health insurance policy. According to Ms. Garcia, "PEREZ selected the health insurance company for [the firm] and was solely responsible for dealing with the Heath Insurance company on behalf of the . . . [f]irm. Affidavit of Anastasia M. Garcia (DE# 47-1 at ¶20, 6/29/15).

Ms. Perez testified that Mr. Martin brought the first health insurance policy to Ms. Garcia's attention and Ms. Garcia told Ms. Perez to contact the insurance agent and set up a meeting. See Deposition of Yenisey Perez (DE# 35-4 at 32, 6/9/15). According to Ms. Perez, she did "not have any authority to determine the [health insurance] policy utilized by Defendants and the choice of policy was based on the doctors Defendant Garcia had appointments with that were covered under the policy." Affidavit of Yenisey Perez (DE# 39-2 at ¶11, 6/11/15).

Ms. Perez "dealt" with the firm's bank and was the bank's contact person if Ms. Garcia was not in the office. See Deposition of Anastasia M. Garcia (DE# 39-5 at 41, 6/11/15). Ms. Perez had access to the corporate bank account, including passwords. See Deposition of Yenisey Perez (DE# 35-4 at 9, 6/9/15); Affidavit of Anastasia M. Garcia (DE# 47-1 at ¶14, 6/29/15). Her duties in relation to the corporate bank account were to make deposits and to follow up with clients if their checks were returned for insufficient funds. See Deposition of Anastasia M. Garcia (DE# 39-5 at 99, 6/11/15). Ms. Perez had authority to make wire transfers on behalf of the firm. Affidavit of Anastasia M. Garcia (DE# 47-1 at ¶5, 6/29/15). She was also authorized to contact the bank and report "that the password was not working or [that] there was a problem with [Ms. Garcia's] dad's account for a wire or something[. Ms. Perez] was able to obtain the information but it was very limited." See Deposition of Yenisey Perez (DE# 35-4 at 32, 6/9/15).

Ms. Perez had the password for the firm's QuickBooks software and used QuickBooks to issue checks for the firm and for Ms. Garcia's father's company which

was under Ms. Garcia's name. See Deposition of Yenisey Perez (DE# 35-4 at 33, 6/9/15); Affidavit of Anastasia M. Garcia (DE# 47-1 at ¶12, 6/29/15). Ms. Garcia would sign the checks because Ms. Perez was never a signatory on the firm's bank account. See Deposition of Yenisey Perez (DE# 35-4 at 33-34, 6/9/15). Ms. Perez would also gather the firm's financial information and submit it to the accountant for federal and state law tax reporting purposes. See Affidavit of Anastasia M. Garcia (DE# 47-1 at ¶22, 6/29/15).

Ms. Cini would provide her hours to Ms. Perez who would report them to the accountant to calculate Ms. Cini's weekly paycheck. See Deposition of Anastasia M. Garcia (DE# 39-5 at 27, 6/11/15). The firm's accountant would calculate the payroll and e-mail the checks to the firm. Id. at 28. Ms. Perez would print the checks for Ms. Garcia's signature. Id. "Defendant Garcia would review the payroll checks and the hours reflected on said checks and once she had reviewed and approved same, Defendant Garcia would provide [Ms. Perez] with [co-workers'] paycheck[s] to pass along to them." Affidavit of Yenisey Perez (DE# 44-3 at ¶6, 6/11/15).[26]

Ms. Perez did not pay the firm's credit card statements. See Deposition of Yenisey Perez (DE# 35-4 at 31, 6/9/15). However, Ms. Perez would use the corporate credit card to make payments for the firm, Affidavit of Anastasia M. Garcia (DE# 47-1 at

---

[26] Although Ms. Garcia testified that Ms. Perez "was solely responsible for making payroll for all employees of the firm, including [Ms. Garcia], see Affidavit of Anastasia M. Garcia (DE# 47-1 at ¶5, 6/29/15), the record evidence shows that Ms. Perez submitted the hours to the firm's accountant and that Ms. Garcia signed the paychecks.

¶19, 6/29/15), and determine when the firm's bills would be paid.[27] See Deposition of Anastasia M. Garcia (DE# 39-5 at 44, 6/11/15). Mr. Martin would also submit receipts to Ms. Perez for reimbursement for business expenses. See Affidavit of Anastasia M. Garcia (DE# 47-1 at ¶15, 6/29/15). Ms. Perez "had complete discretion and authority to make such reimbursement." Id.

Towards the end of Ms. Perez' employment with the defendants, some bookkeeping responsibilities were shifted from Ms. Garcia's accountant to Ms. Perez. Deposition of Yenisey Perez (DE# 35-4 at 34, 6/9/15). During that time, Ms. Perez would input information from the firm's statements into QuickBooks. Id.

### iv)    The End of Ms. Perez' Employment with the Defendants

At the end of 2014, Ms. Perez complained to Ms. Garcia about the hours she was working. See Deposition of Yenisey Perez (DE# 35-4 at 28, 6/9/15). Ms. Garcia told Ms. Perez that she would not hire a third person and that "[they] needed to figure it out." Id. On February 5, 2015, Ms. Perez wrote an email to Ms. Garcia asking to be compensated for the overtime hours she worked during the five years of her employment. See February 5, 2015 Email (DE# 35-10, 6/9/15). This was the first time Ms. Perez made a written demand for overtime pay. See Affidavit of Yenisey Perez (DE# 44-3 at ¶19, 6/11/15). Ms Perez either left or was constructively discharged from

---

[27] The parties dispute the amount of judgment and discretion Ms. Perez exercised in paying the firm's bills. According to Ms. Garcia, Ms. Perez "had discretion to contest objectionable invoices submitted to the [l]aw [f]irm." Affidavit of Anastasia M. Garcia (DE# 47-1 at ¶16, 6/29/15). Ms. Perez testified that she did not review invoices inaccuracies and never questioned an invoice. See Deposition of Yenisey Perez (DE# 35-4 at 33, 6/9/15).

18

her employment on February 14, 2015.

**b.      Ms. Perez' Paternity Lawsuit and Child Support Proceedings**

From August 2011 through June 24, 2013, Ms. Perez was the petitioner in an

action for paternity and child support. Mr. Martin appeared as counsel of record on

several of the documents filed in the state court proceedings. According to Ms. Perez,

"[a]ll documents filled out and filed on [her] behalf for [the] Paternity Action were

reviewed by [her] attorney of record, which was [sic] Defendants, specifically

Defendants' associate Frank [Martin]." Affidavit of Yenisey Perez (DE# 44-3 at ¶4,

6/11/15).

On August 16, 2011, Ms. Perez filed a Financial Affidavit in connection with

these proceedings wherein she attested that she was employed by the defendants and

was paid $575.00 per week. See Financial Affidavit (Long Form) (DE# 35-7, 6/9/15). In

completing this form, Ms. Perez was required to disclose "contingent assets" and

"contingent liabilities." Id. at 11. The form included the following instructions: "If you

have any POSSIBLE ASSETS (income potential, accrued vacation or sick leave,

bonus, inheritance, etc.) or POSSIBLE LIABILITIES (possible lawsuits, future unpaid

taxes, debts assumed by another), you must list them here." Id. (capitalization in

original). In this section, Ms. Perez listed no contingent assets and no contingent

liabilities. Id. According to Ms. Perez, she

> was trained by Frank [Martin] on how to fill out a basic financial affidavit
> form so that [she] could assist clients [in] filling out [the] form. When [she]
> had to fill out the form for [her]self[, she] filled it out by inputting the
> relevant information into the system . . . at Defendants' office, and . . .
> provided it to Frank for his review. Frank put his name to [sic] the
> documents that were filed in his representation of [Ms. Perez] and

reviewed all such material prior to it be [sic] filed on[her] behalf. Frank never explained to [Ms. Perez] the meaning of "contingent Assets and Liabilities" including "possible assets" or "possible lawsuits." He also did not explain to [Ms. Perez] what certain sections were for. Frank also advised [Ms. Perez] that because [she] was basing the information [she] was inputting into the Affidavit on [her] W-2 Form it would not be complicated for [her] to fill out. [She] had not taken any classes or had any formal training, other than the limited training [she] had received from Defendants, by and through their agent, Frank. [She] was not aware that [she] had an obligation to disclose that Defendants were not paying [her] additional compensation for hours worked in excess of 40 per week. [She] was relying on the representation of my counsel of record, Defendants, to advise [her] of what information needed to be included in the Financial Affidavit being filed on [her] behalf.

Affidavit of Yenisey Perez (DE# 44-3 at ¶4, 6/11/15).

At the end of the Financial Affidavit, just above the signature line, the form

contained the following statement:

I understand that I am swearing under oath to the truthfulness of the claims made in this affidavit and that the punishment for knowingly making a false statement includes fines and/or imprisonment.

See Financial Affidavit (Long Form) (DE# 35-7 at 12, 6/9/15). Ms. Perez signed this

form and had it notarized. Id.

Ms. Perez prevailed in the state court proceedings and on March 2, 2012, the

state court issued an Income Deduction Order garnishing wages earned by the father of

Ms. Perez' son. See Income Deduction Order (DE# 35-9, 6/9/15). On June 24, 2013,

the state court issued an Amended Final Judgment of Paternity granting Ms. Perez

child support as well as retroactive child support. See Amended Final Judgment of

Paternity (DE# 35-6, 6/9/15).

On February 6, 2015, shortly before Ms. Perez' employment with the defendants

ended, the defendants and Mr. Martin filed a Notice of Non-Representation (DE# 44-1,

6/25/15) in the state court proceedings.[28]

## II.    Plaintiff Cintia Cini

Ms. Cini worked as a secretary for the defendants from March 28, 2014 until

February 14, 2015.[29] Ms. Perez was friends with Ms. Cini and recommended her to Ms.

Garcia for employment. See Deposition of Yenisey Perez (DE# 35-4 at 35, 6/9/15). Ms.

Cini was interviewed and hired by the defendants, not by Ms. Perez. See Affidavit of

Yenisey Perez (DE# 39-2 at ¶9, 6/11/15).

Ms. Cini was supposed to work 9:00 AM to 5:00 PM. However,

[m]ere days after [her] employment commenced, [she] worked an average
of 43-44 hours a week for Defendants. Daily and regularly [Ms. Cini] would
receive texts and calls from Defendants which [she] was required to
respond to from approximately 7:00 a.m., despite the fact that [she] was
only required to be in the office at 9:00 a.m. Defendant Garcia [was] a
mediator and would often mediate past 5:00 p.m. and [Ms. Cini] would be
required to work until the mediation was complete. Thus, the time that
[Ms. Cini] would finish work for the day would vary. [She] did not have a
regular and uninterrupted lunch break and . . . would often eat at [her]
desk while working on a file, answering the phones, etc. Regularly,
Defendant Garcia and her associate, Frank, would call [her] to give [her]
something to complete and would interrupt [her] lunch break.

See Affidavit of Cintia Cini (DE# 39-3 at ¶5, 6/11/15).

At the beginning of her employment, Ms. Garcia told Ms. Cini that she would pay

her $12.00 an hour to start and that within three months her hourly rate would increase

to $13.00. Ms. Cini never received an hourly rate increase. When Ms. Cini worked

---

[28] Although the date on the certificate of service is listed as February 6, 2014, it is
clear from the electronic header on the document that it was filed on February 6, 2015.

[29] As with Ms. Perez, the parties dispute whether Ms. Cini was constructively
discharged.

overtime, the defendants would pay her at her regular rate of $12.00 per hour and did not pay her time-and-a-half. Id. at 8.[30]

      Ms. Cini never complained to Ms. Garcia about her hourly rate of pay or not receiving overtime compensation because Ms. Garcia "was a very intimidating person." Deposition of Cintia Cini (DE# 35-11 at 7, 6/9/15). Ms. Cini also "witnessed the hostile treatment PEREZ received by Defendants when she complained about the workload or the hours she was working." Affidavit of Cintia Cini (DE# 44-2 at ¶23, 6/11/15).

      Ms. Cini would keep track of her own hours and would report them to Ms. Perez.[31] Ms. Perez "would write up the check and then give them [sic] to [Ms. Garcia] to review and sign." Deposition of Cintia Cini (DE# 35-11 at 9, 6/9/15). However, Ms. Cini did not report all of the hours she worked. Id.[32] Ms. Cini testified that it was "difficult to know exactly how many hours" she worked for the defendants because:

      Sometimes Ms. Garcia would start texting [her] at 7 in the morning to go

---

[30] Ms. Cini's claim is only for half-time overtime wages. See Affidavit of Cintia Cini (DE# 39-3 at ¶9, 6/11/15).

[31] According to Ms. Garcia, Ms. Perez "was in charge of keeping track of the hours worked by . . . CINI" and "received the hours reported by CINI then ensured the hours were paid for after payroll deductions were made." Affidavit of Anastasia M. Garcia (DE# 47-1 at ¶7, 6/29/15).

[32] Ms. Cini testified that she worked an estimated average of 40 to 43 hours per week. The defendants dispute this estimate, noting that it is unsupported by Ms. Cini's payroll records, but admit that Ms. Cini worked overtime and that she was not paid overtime, but was instead paid at her regular rate of pay. See Defendants' Response to Plaintiffs' Statement of Material Facts (DE# 47 at ¶¶5, 8, 6/29/15). Additionally, Ms. Garcia attests that "[she] was never told . . . by either CINI or PEREZ that CINI worked additional hours which she failed to report" and that "[she] did not have knowledge that CINI worked hours beyond those reported by [Ms. Cini]." Affidavit of Anastasia M. Garcia (DE# 47-1 at ¶23, 6/29/15).

get her medication. Instead of leaving at 5 o'clock, [Ms. Cini] would have
to leave at 5:30, 5:45. So [Ms. Cini] would rough estimate, [she] would
say, 5:30 instead of 5:45, which 15 minutes extra each day comes up to a
good amount.

Id. at 11.[33] Ms. Cini did not report the hours for when Ms. Garcia would text her at 7:00

AM because she believed this would upset Ms. Garcia. Id. at 35. Ms. Cini believed that

had she submitted these additional, unreported overtime hours, Ms. Garica would have

paid her at her regular rate of pay of $12.00. Id. at 33.

      Ms. Cini would sometimes work after 5:00 PM:

      There were many reasons why. There was a mediation, and I would have
to stay late because Ms. Garcia wanted me to stay. Or I would have to
leave for an hour to go do something personal for Ms. Garcia, did not
finish my work, and I would have to stay. It just varied. There was clients
[sic] there because there was [sic] meetings that were late, and we would
have to stay.

      Q. What personal errands did you do for Ms. Garcia after hours?

      A. It varied. I would go pick up Ms. Garcia's glasses once. It took me
about an hour and a half. Go pick up her medicine, go buy coffee, go buy
chocolate cookies. Just varied.

Deposition of Cintia Cini (DE# 35-11 at 29, 6/9/15). There were times when Ms. Garcia

would ask Ms. Cini to stay past 5:00 PM to make copies or "hand out whatever it was

that she needed." Id. at 32.[34]

---

[33] In her affidavit, Ms. Cini testified that Ms. Garcia "would daily and regularly
start texting and calling [her], which [she] was required to respond to, from
approximately 7:00 a.m., despite the fact that [Ms. Cini] was only required to be in the
office at 9:00 a.m." Affidavit of Cintia Cini (DE# 44-2 at ¶22, 6/25/15).

[34] Ms. Garcia claims she did not know that Ms. Cini did not report all of the hours
that she worked. See Defendants' Response to Plaintiffs' Statement of Material Facts
(DE# 47 at ¶7, 6/29/15). This is a disputed issue of fact. Ms. Cini attested that
"Defendant Garcia witnessed [her] staying past 5:00 p.m. and working the additional

Every two to three months,[35]  Ms. Cini or Ms. Perez were also required to go to Costco on Saturday to purchase supplies for the office and for Ms. Garcia's personal use. See Affidavit of Cintia Cini (DE# 44-2 at ¶22, 6/25/15). They would have to drop the purchases off at the office and at Ms. Garcia's home. Id. The excursion would take approximately four hours. Id.

There were other occasions when Ms. Cini worked before or after her scheduled hours:

> there were evenings when [Ms. Cini] would receive a call from Defendant Garcia and she would instruct [Ms. Cini] to ensure that [Ms. Cini] placed a file on [Ms. Garcia's] chair at the office for the following morning. [Ms. Cini] would have to go to the office and place the file as instructed even though it was after 5:00p.m. [Ms. Cini] also recall[ed] on one occasion that [she] was required to take Defendant Garcia's car to the mechanic and . . . had to leave . . . at approximately 6:00 a.m. so that [she] could make it to the mechanic by the time that [Ms. Garcia] had instructed [Ms. Cini] to drop the car off at. [Ms. Cini] recall[ed] another occasion that [she] was required to go to the bank and bring Defendant cash as she was at her hair salon and did not have cash to pay for the services she had received. It was after 5:00 p.m. and [Ms. Cini] complied with Defendant Garcia's instructions and was completed [sic] with this task well after 5:00 p.m., [her] agreed to work hours.

See Affidavit of Cintia Cini (DE# 44-2 at ¶22, 6/25/15).

_____

time." Affidavit of Cintia Cini (DE# 44-2 at ¶22, 6/25/15). As outlined above, there is record evidence that Ms. Garcia knew or should have known that Ms. Cini was not reporting all of the hours she worked. The defendants argue that Ms. Cini's "belief that Defendants knew she worked more hours is not admissible." However, Ms. Cini's affidavit is not based on mere belief but on specific factual allegations such as Ms. Cini receiving text messages about work at 7:00 AM when she was supposed to start at 9:00 AM and having to stay past 5:00 PM until mediations were concluded in the office. See Affidavit of Cintia Cini (DE# 39-3 at ¶5, 6/11/15).

[35] Ms. Garcia denies that Ms. Cini ever worked on weekends. See Deposition of Anastasia M. Garcia (DE# 39-5 at 31, 6/11/15).

## STANDARD OF REVIEW

The Court, in reviewing a motion for summary judgment, is guided by the standard set forth in Federal Rule of Civil Procedure 56(a), which states, in relevant part, as follows:

> A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a).

The moving party bears the burden of meeting this exacting standard. Celotex Corp. v. Catrett, 477 U.S. 317, 322-323 (1986); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). That is, "[t]he moving party bears the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1437 (11th Cir. 1991) (quoting Celotex, 477 U.S. at 323) (internal quotation marks omitted).

In assessing whether the moving party has satisfied this burden, the Court is required to view the evidence and all factual inferences arising therefrom in the light most favorable to the non-moving party. Batey v. Stone, 24 F.3d 1330, 1333 (11th Cir. 1994). "When evaluating cross-motions for summary judgment, the Court analyzes each individual motion on its own merits and thus views the facts on each motion in the light most favorable to the respective nonmovant." Adega v. State Farm Fire & Cas. Ins.

25

Co., No 07-20696, 2009 WL 3387689, at *3 (S.D. Fla. Oct. 16, 2009). Summary

judgment is appropriate when there is no dispute as to any material fact and only

questions of law remain. Reich v. John Alden Life Ins. Co., 126 F.3d 1 (1st Cir. 1997).

If the record presents factual issues, the Court must deny the motion and proceed to

trial. Adickes, 398 U.S. at 157; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255

(1986).

Despite these presumptions in favor of the non-movant, the Court must be

mindful of the purpose of Rule 56 which is to eliminate the needless delay and expense

to the parties and to the Court caused by an unnecessary trial. Celotex, 477 U.S. at

322-323. Consequently, the non-moving party cannot merely rest upon his or her bare

assertions, conclusory allegations, surmises or conjectures.  Id.  As the Supreme Court

noted in Celotex:

> [T]he plain language of Rule 56(c) mandates the entry of summary
> judgment . . . against the party who fails to make a showing sufficient to
> establish the existence of an element essential to the party's case, and on
> which the party will bear the burden of proof at trial.  In such a situation,
> there can be "no genuine issue as to any material fact," since a complete
> failure of proof concerning an essential element of the non-moving party's
> case necessarily renders all other facts immaterial.

Id. at 322-323. Thus, the mere existence of a scintilla of evidence in support of the non-

moving party's position is insufficient. There must be evidence on which the jury could

reasonably find for the non-movant. Anderson, 477 U.S. at 251; Matsuchita Elec. Indus.

Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

## ANALYSIS

**I.     Defendants' Motion for Final Summary Judgment (DE# 35)**

The defendants seek final summary judgment on Ms. Perez' overtime claim

based on the doctrine of judicial estoppel. <u>See</u> Defendants' Motion for Final Summary

Judgment (DE# 35, 6/9/15). If the Court does not apply the doctrine of judicial estoppel,

the defendants argue that Ms. Perez' overtime claim should be limited to a half-time

rate, not time-and-a-half, because she was a salaried employee. <u>Id.</u> at 14-15. With

respect to Ms. Cini's overtime claim, the defendants argue they are entitled to summary

judgment because they have now agreed to pay Ms. Cini's overtime hours as reflected

in her payroll and time records, plus liquidated damages. Additionally, the defendants

argue that both plaintiffs' claims should be stricken under the Court's inherent power.

<u>Id.</u> at 16-18. For the reasons stated herein, the defendants' motion for summary

judgment should be denied in its entirety.

**a.     Judicial Estoppel**

The defendants seek summary judgment on Ms. Perez' claims[36] based on the

doctrine of judicial estoppel. Specifically, the defendants argue that Ms. Perez should

be precluded from presenting her overtime claim to the jury because on August 16,

2011, approximately three and a half years <u>before</u> filing the instant lawsuit, Ms. Perez

filed a sworn Financial Affidavit in connection with state court paternity and child

support proceedings wherein she did not list her future, potential claims against the

---

[36] The defendants seek to apply the doctrine of judicial estoppel to Ms. Perez'
overtime and retaliation claims. <u>See</u> Defendants' Motion for Final Summary Judgment
(DE# 35 at 12-13, 6/9/15).

defendants as "possible assets." See Financial Affidavit (Long Form) (DE# 35-7 at 11, 6/9/15). According to the defendants, Ms. Perez should have disclosed both her potential overtime claim and her potential breach of contract claim[37] based on her employer requiring her to work in excess of forty hours.

The plaintiffs maintain that Ms. Perez "was not aware that [she] had an obligation to disclose that Defendants were not paying [her] additional compensation for hours worked in excess of 40 per week" and that she "was relying on the representation of [her] counsel of record, Defendants, to advise [her] of what information needed to be included in the Financial Affidavit being filed on [her] behalf." Plaintiffs' Response in Opposition to Defendants' Motion for Final Summary Judgment (DE# 43 at 4, 6/21/15) (quoting Affidavit of Yenisey Perez (DE# 44-3 at ¶4, 6/11/15)).

"Judicial estoppel is an equitable doctrine invoked at a court's discretion, designed to protect the integrity of the judicial process." Stephens v. Tolbert, 471 F.3d 1173, 1177 (11th Cir. 2006). It provides that "where a party assumes a certain position in a legal proceeding and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." Allapattah Servs., Inc. v. Exxon Corp., 372 F. Supp. 2d 1344, 1367 (S.D. Fla. 2005) (citing New Hampshire v. Maine, 532 U.S. 742, 749 (2001)). A party asserting judicial estoppel does not need to show prejudice. Burnes v. Pemco Aeroplex, Inc., 291 F.3d 1282, 1285 (11th Cir. 2002).

---

[37] Ms. Perez has not asserted a breach of contract claim against the defendants.

28

The Eleventh Circuit has identified two primary factors in determining whether to apply judicial estoppel: "First, the allegedly inconsistent positions must have been taken under oath in a prior proceeding, and second, they must have been calculated to make a mockery of the judicial system." Palmer & Cay, Inc. v. Marsh & McLennan Cos., 404 F.3d 1297, 1307 n. 17 (11th Cir. 2005) (internal quotation marks omitted). The undersigned finds that the defendants cannot satisfy the second factor. Ms. Perez' statements in a financial disclosure affidavit, which did not identify potential FLSA claims she had not yet asserted against the defendants, do not evidence a calculated attempt by Ms. Perez "to make a mockery of the judicial system."

The defendants rely in part on Stabielli v. Eagle Roofing Prods. Fla., Inc., No. 12-80766-CIV, 2013 U.S. Dist. LEXIS 149859 (S.D. Fla. Aug. 14, 2013) to support their argument that the Court should apply judicial estoppel to extinguish Ms. Perez' claims. In Stabielli:

> Plaintiff first suspected she had a viable FLSA overtime claim against [her employer] on June 18, 2012, the day she was terminated. Within days of her June 18, 2012 termination, Plaintiff spoke with at least one attorney regarding her FLSA overtime claim against [her employer]. Within two weeks of her June 18, 2012 termination, Plaintiff met with her current attorney and discussed her FLSA claim against [her employer]. On July 13, 2012, Plaintiff formalized the retention of her counsel in [the FLSA] action.

Id. at *2-3. On the same day, July 13, 2012, the plaintiff filed "a sworn Family Law Financial Affidavit" in ongoing child support proceedings wherein she failed to list her potential FLSA claim under the form's "Contingent Assets and Liabilities" section. Id. at *3. The following day, the plaintiff filed her FLSA lawsuit in federal court and made no effort to supplement her financial affidavit. Id.

29

This Court in <u>Stabielli</u> applied the doctrine of judicial estoppel to preclude the plaintiff from recovering attorney's fees,[38] noting that the plaintiff had taken inconsistent positions in the state court proceeding and in federal court: "Plaintiff's failure to disclose her known FLSA claim and lawsuit on her sworn Financial Affidavit in her Child Support Proceedings is the legal equivalent of a sworn representation that her FLSA claim and lawsuit did not exist." <u>Id.</u> at *7. This Court noted the importance of filing accurate financial affidavits in family court proceedings. <u>Id.</u> at 4 n.2 This Court also rejected the plaintiff's argument that she was representing herself <u>pro se</u> in the family court proceedings, noting that the plaintiff had successfully represented herself in family court and in other legal proceedings. <u>Id.</u> at *10-11.

<u>Stabielli</u> is factually distinguishable from the instant case. In <u>Stabielli</u>, the plaintiff spoke to at least two attorneys about her possible overtime claim <u>before</u> filing her financial affidavit and commenced her FLSA lawsuit only one day after filing the financial affidavit. <u>Stabielli</u>, 2013 U.S. Dist. LEXIS 149859, at *2-3. Here, the plaintiff filed her FLSA lawsuit approximately three and a half years after she filed her financial affidavit. While there is some record evidence that Ms. Perez believed she was owed overtime and "felt abused and taken advantage [sic] for five years" by the defendants, <u>see</u> Deposition of Yenisey Perez (DE# 35-4 at 28, 6/9/15), there is no record evidence that Ms. Perez was aware of her rights under the FLSA or that she discussed any

---

[38] Because the parties had already settled the plaintiff's FLSA claim, the Court applied the doctrine of judicial estoppel to deny an award of attorney's fees to the plaintiff's counsel. <u>Stabielli</u>, 2013 U.S. Dist. LEXIS 149859, at *15.

potential overtime claims with an attorney on or around August 16, 2011,[39] when she

filed the Financial Affidavit (Long Form) (DE# 35-7 at 11, 6/9/15). While Ms. Perez

would have had an ongoing duty to update her financial affidavit, the record evidence is

insufficient to support the conclusion that Ms. Perez failed to do so in a calculated effort

to make a mockery of the judicial system.

The defendants state that: "PEREZ fails to address the argument that when she

executed her Financial Affidavit she knew that there was a breach of employment

contract." Defendants' Reply to Response to Motion for Final Summary Judgment and

Statement of Material Facts (DE# 53 at 5, 7/6/15). However, Ms. Perez has not

asserted a breach of contract claim against the defendants. See Plaintiffs' Response in

_____

[39] In their reply, the defendants state:

It is argued that when PEREZ signed her financial affidavit she had no
"pre-conceived notion that she would later file a claim in federal court."
PEREZ fails to refute Defendants' Statement of Undisputed Facts, in
paragraph two, where her deposition testimony is quoted. PEREZ
conceded that, "at the beginning when I started working . . . I use to do
overtime and not get paid for that . . . And I believe the accountant
brought it to her attention and that is why I became salary (sic)." [D.E.
35-4 p. 93 L5-10]. PEREZ was asked whether she discussed the overtime
issue with GARCIA, and that is when she was told she would be paid
$13.00 an hour or a salary. She chose to be paid a salary. [D.E. 35-4 p.
93 L11-18]. She had that discussion with GARCIA three years before her
deposition was taken on May 6, 2015. [D.E. 35-4 p. 93 L20-21]. Three
years back would [have] be[en] May 6, 2012. The child custody
proceedings ended on June 24, 2013, during the relevant time period in
these proceedings. [D.E. 35 Statement of Undisputed Facts ¶3].

Defendants' Reply to Response to Motion for Final Summary Judgment and Statement
of Material Facts (DE# 53 at 2, 7/6/15). While Ms. Perez had a discussion with Ms.
Garcia concerning the manner in which she wished to be compensated, this discussion
did not encompass potential claims the plaintiff may have had against Ms. Garcia and
the defendant firm.

31

Opposition to Defendants' Motion for Final Summary Judgment (DE# 43 at 4, 6/21/15).
Thus, it is unclear how Ms. Perez has taken allegedly inconsistent positions with
respect to any breach of contract claim against the defendants, as is required to meet
the first factor in applying judicial estoppel.

There is an additional reason why this Court should exercise its discretion and
decline to apply the doctrine of judicial estoppel to extinguish Ms. Perez' claims. In
determining whether to apply judicial estoppel, the Court must give due consideration to
all of the circumstances of a particular case. See Baloco v. Drummond Co., Inc., 767
F.3d 1229, 1245 (11th Cir. 2014) (stating that in applying judicial estoppel, "courts
should always consider the individual circumstances of a given case."). Here, Ms. Perez
was represented by Mr. Martin, an employee of the defendant firm, in the state court
proceedings. The defendants' own reply cites to record evidence that Mr. Martin knew
or had reason to know about Ms. Perez' potential overtime claim. See Defendants'
Reply to Response to Motion for Final Summary Judgment and Statement of Material
Facts (DE# 53 at 4, 7/6/15) (stating "PEREZ also fails to refute her deposition testimony
where she states that **she would always tell Mr. Martin that she had an overtime
claim**.") (emphasis added).[40] Moreover, Mr. Martin, who practices family law, see

---

[40] The relevant deposition testimony is the following:

**Q. Did you mention anything to Frank at that time about overtime
compensation?**

A. **I would always tell him like, you know, I'm working late**, look at the
time, look at what I'm doing, she had me going to her house, she had me
this, she had me that. But I never, I mean, regular complaints.

Deposition of Frank Martin (DE# 47-2 at 4 6/29/15), would have arguably been familiar with the Financial Affidavit form and the types of disclosures required by that form.

Judicial estoppel is a doctrine grounded in equity. While the defendants have cited case law that an attorney's omission does not insulate a client from suffering the adverse consequences of that omission, see Defendants' Reply to Response to Motion for Final Summary Judgment and Statement of Material Facts (DE# 53 at 3-4, 7/6/15) (citing Barger v. City of Cartersville, 348 F.3d 1289, 1295 (11th Cir. 2003)), in the instant case the attorney who represented the Ms. Perez is an employee of the defendant firm. The defendants should not be entitled to the dismissal of Ms. Perez' FLSA claims when they and Mr. Martin represented Ms. Perez in the same family court proceedings where they claim Ms. Perez filed an inaccurate financial affidavit. Notably, the certificate of service on the very document at issue bears the name of the defendant firm and what appears to be Mr. Martin's signature. See Financial Affidavit (Long Form) (DE# 35-7 at 12, 6/9/15).[41] Under these circumstances, the Court should exercise its discretion and not apply the doctrine of judicial estoppel.

---

Defendants' Motion for Final Summary Judgment (DE# 35 at 2, 6/9/15) (emphasis in motion) (quoting Deposition of Yenisey Perez (DE# 35-4 at 28, 6/9/15)).

[41] The attorney's signature on the Financial Affidavit (Long Form) (DE# 35-7 at 12, 6/9/15) is illegible. However, Mr. Martin was the only other attorney who was employed by the defendant firm and the words "for" appear next to Ms. Garcia's name. Id.

### b.   Whether Ms. Perez' Acceptance of a Salary Precludes Her from Seeking Time-and-a-Half for Unpaid Overtime

The defendants argue in the alternative that:

> In the event that the Court does not apply the doctrine of judicial estoppel and dismiss PEREZ' claims, it should, as a matter of law, find that the $575.00 salary was intended to compensate PEREZ for all hours worked inclusive of hours worked in excess of 40 per week. Her claim should then be for half-time (½) not time-and-a-half (1½).

Defendants' Motion for Final Summary Judgment (DE# 35 at 2, 6/9/15).

The plaintiffs maintain that Ms. Perez' salary was only meant to compensate her for working forty hours per week and the work she performed beyond those forty hours were uncompensated work. See Plaintiffs' Response in Opposition to Defendants' Motion for Final Summary Judgment (DE# 43 at 10, 6/21/15). According to the plaintiffs: "the Jury only needs to determine the amount of damages, and it can make its own finding as to how many hours it believes the $575 salary was intended by the [p]arties to compensate." Id. at 12. The plaintiffs further note that under the law, Ms. Perez's "worker's rights to overtime wages cannot be waived or abridged by contract" and that the defendant admitted that they did not pay Ms. Perez overtime if she worked in excess of forty hours. Id.

"The FLSA mandates overtime payment for non-exempt employees for hours worked over 40 in a workweek at a rate of one and one-half times the regular rate at which the employee is paid." West v. Verizon Servs. Corp., No. 8:08-cv-1325-T-33MAP, 2011 WL 208314, at *10 (M.D. Fla. Jan. 21, 2011) (citing 29 U.S.C. § 207(a)(1)). However, some courts have stated that "a non-exempt employee who receives a weekly salary for all hours worked has, by definition, already been paid his 'regular rate'

34

for all hours worked in the workweek. Thus, a salaried employee is only owed half-time for any hours worked in excess of forty [hours] per workweek." Torres v. Bacardi Global Brands Promotions, Inc., 482 F. Supp. 2d 1379, 1381 (S.D. Fla. 2007); see also Anderson v. Stiefel Aluminium Inc., No. 8:12-cv-1756-T-30MAP, 2013 WL 3714089, at *2, n. 1 (M.D. Fla. July 15, 2013) (stating that "[t]he law is clear that the half-time method applies when the employee's salary was intended to compensate the employee for all the hours he worked.").

The defendants cite to Torres, 482 F. Supp. 2d at 1381 to support their position that if Ms. Perez is not an exempt employee, she should only be entitled to overtime compensation at the half-time pay rate. In Torres, this Court granted summary judgment for the defendants on this issue reasoning that the plaintiff:

> was paid a fixed salary that he received no matter how many hours he worked in a given week. Therefore, if [the plaintiff] is rendered to be a non-exempt employee, his overtime must be computed by (1) dividing his weekly salary by the total number of hours worked in each given week (his "regular rate"), and then (2) after determining his regular rate for a given week, [the plaintiff's] overtime damages would be one-half his regular rate multiplied by the number of overtime hours worked in that week.

Id. at 1381.

The Torres case relied on the Fifth Circuit's decision in Blackmon v. Brookshire Grocery Co., 835 F.2d 1135 (5th Cir. 1988). In Blackmon, the Fifth Circuit concluded that the district court had miscalculated the plaintiff's award of damages when it awarded the plaintiff time-and-a-half because "[t]hat method [wa]s inappropriate when the employer and employee **have agreed** on a fixed salary for varying hours." Id. at 1138 (emphasis added).

The defendants have not cited an Eleventh Circuit case to support their position that Ms. Perez is only entitled to half-time compensation, if she is entitled to any overtime compensation at all. Moreover, there is a split among the courts concerning the appropriate method of calculating overtime compensation for fixed salary, non-exempt employees. See e.g., Ramirez v. Urban Outfitters, Inc., No. 6:13-cv-1074-Orl-22GJK, 2014 WL 4090546, at *6 (M.D. Fla. Aug. 15, 2014) (on a motion to dismiss, recognizing that "[t]he Eleventh Circuit has not directly addressed the issue, but the other circuits are split as to whether the appropriate method for calculating unpaid overtime wages in a misclassification case is the half-time method."); O'Neill v. Mermaid Touring Inc., 968 F. Supp. 2d 572, 587 (S.D.N.Y. 2013) (recognizing "the split of opinion in the federal courts . . . as to the proper measure of overtime damages for a misclassified employee.").

In the instant case, the Court does not need to decide this issue on summary judgment because the parties have presented conflicting evidence concerning whether Ms. Perez' fixed salary was intended to compensate her for all hours worked. The defendants have presented Ms. Garcia's testimony that:

> When a salary was offered to PEREZ, it was agreed and understood that the salary was intended to pay her for all hours worked each week. She received the same salary whether she worked less than 40 hours or more than 40 hours per week. That was the understanding reached with PEREZ. She agreed to the salary and continued to work different hours every week in exchange for the salary of $575.00 per week.

Affidavit of Anastasia M. Garcia (DE# 35-15 at ¶2, 6/29/15). They also point to the fact that Ms. Perez continued to receive her salary for a number of years without complaining to Ms. Garcia that she was not being compensated for additional hours

36

worked.

Ms. Perez presents her own testimony suggesting that the agreement referred to

in Ms. Garcia's affidavit never took place:

> When I was hired, Defendants told me that my work hours would be from 9:00 a.m. through to 5:00 p.m. Initially, my rate of pay was set at approximately $11.00 or $12.00 per hour (I cannot recall the exact remuneration at this time). Approximately on or about 2012-2013, Defendant Garcia approached me and asked if I would prefer to have a dollar increase in my hourly rate or if I would prefer to be paid $575.00 weekly. **The intention was that I would continue to work the hours required of me and that this amount would only cover the forty ( 40) hours of work per week**. As such, Defendants changed my rate of pay so that I was paid by check in the amount of $575.00 per week. While the method of payment (from hourly to salary) was changed by Defendants, **at no time did Defendants indicate to me that the amount I was earning was to cover any and all hours I worked above (40) hours per week**.

See Affidavit of Yenisey Perez (DE# 44-3 at ¶2, 6/11/15) (emphasis added).

The issue of whether the parties had an agreement should be submitted to the

jury because the parties dispute whether Ms. Perez' salary of $575 per week was

intended to compensate her for all hours worked, including overtime hours. See Martin

v. S. Premier Contractors, Inc., No. 2:11-CV-00197-RWS, 2013 WL 822635, at *10

(N.D. Ga. Mar. 6, 2013) (denying summary judgment for employer "although there [wa]s

evidence in the record that [the p]laintiff regularly worked more than 40 hours per week"

and stating that "[g]iven the lack of evidence in the record regarding the number of

hours [the p]laintiff's salary was intended to compensate, the Court cannot rule as a

matter of law that the overtime compensation, if any, owed [p]laintiff should be

calculated on a half-time basis.").

Based on the record in the instant case, genuine issues of material fact preclude

summary judgment for the defendants concerning the rate of overtime compensation Ms. Perez would be entitled to if she prevails on her overtime claim.

### c.    Ms. Cini's Overtime Claim

The defendants seek summary judgment on Ms. Cini's overtime claim because Ms. Cini admitted during her deposition that she did not report all of the hours she worked, she did not complain to the defendants about her pay or take steps to ask for an additional amount. See Defendants' Motion for Final Summary Judgment (DE# 35 at 16, 6/9/15). Ms. Cini also admitted that if she had reported her additional overtime hours, she would have been paid at her regular rate of pay. Id. The defendants note that they have now agreed to compensate Ms. Cini for the hours she worked in excess of 40 hours per week as reflected in her payroll and time records plus reasonable liquidated damages. Id. For these reasons, the defendants argue that the Court should enter summary judgment in their favor on Ms. Cini's overtime claim.

The FLSA requires employers to pay overtime. See 29 U.S.C. § 207(a)(1).  "An unpaid-overtime claim has two elements: (1) an employee worked unpaid overtime, and (2) the employer knew or should have known of the overtime work." Bailey v. TitleMax of Ga., Inc., 776 F.3d 797, 801 (11th Cir. 2015) (citing Allen v. Bd. of Pub. Educ. for Bibb Cnty., 495 F.3d 1306, 1314-15 (11th Cir. 2007)). An employer's knowledge of overtime work can be actual or constructive. Allen, 495 F.3d at 1318. "An employer is said to have constructive knowledge of its employee's overtime work when it has reason to believe that its employee is working beyond his shift." Id. at 1319 (citing 29 C.F.R. § 785.11). Moreover, "[t]he employer's knowledge is measured in accordance

38

with his duty . . . to inquire into the conditions prevailing in his business.'" Id. (citations and internal quotation marks omitted).

According to the defendants, "CINI offers no facts to refute that Defendants had **no reason to believe that the hours submitted by CINI were false**" and that "Defendants had no knowledge that [Ms. Cini] worked additional hours" for which she was not compensated. See Defendants' Reply to Response to Motion for Final Summary Judgment and Statement of Material Facts (DE# 53 at 5, 7/6/15) (emphasis in original). The undersigned disagrees with the defendants' characterization of the record. There is record evidence in the instant case that Ms. Cini worked additional hours which were not reflected in her payroll and time records for which she was not compensated. Moreover, there is a genuine issue of material fact concerning whether Ms. Garcia knew or should have known that Ms. Cini was working uncompensated, unreported hours. For instance, Ms. Cini testified that she would regularly receive text messages and telephone calls from Ms. Garcia beginning as early as 7:00 AM. See Affidavit of Cintia Cini (DE# 39-3 at ¶5, 6/11/15). She also testified that Ms. Garcia required her to stay past 5:00 PM if there was a mediation in progress, if there were clients present for meetings or if Ms. Cini needed to make copies and "hand out whatever it was that [Ms. Garcia] needed." See Deposition of Cintia Cini (DE# 35-11 at 9, 32 6/9/15). Ms. Cini also testified that she sometimes went to Costco on Saturdays to purchase items for Ms. Garcia and the office. See Affidavit of Cintia Cini (DE# 44-2 at ¶22, 6/11/15).

The defendants argue that the Court should disregard Ms. Cini's testimony to the

extent that it is based on her belief as to what the defendants should have known because "CINI's belief . . . is not admissible evidence." Defendants' Reply to Response to Motion for Final Summary Judgment and Statement of Material Facts (DE# 53 at 5, 7/6/15) (citing Josendis v. Wall to Wall Residence Repairs, Inc., 662 F.3d 1292, 1318 (11th Cir. 2011)). However, the defendants have not shown why the Court should overlook Ms. Cini's factual testimony that she would receive text messages from Ms. Garcia sometimes as early as two hours before her scheduled start time, that she sometimes had to stay at the office past 5:00 PM and that on some Saturdays she would have to go to Costco to make purchases for Ms. Garcia or the law firm. See supra.

Based on the record in the instant case, a reasonable jury could conclude that the defendants knew or should have known that Ms. Cini was not reporting all of the hours she worked. See Allen, 495 F.3d at 1321 (stating that although "[s]ome Plaintiffs did not inform their supervisors of their overtime work . . . an issue of fact nonetheless remain[ed] as to whether the [employer] should be charged with constructive knowledge as to them. . . . We have said that if an employer had an opportunity to acquire knowledge of an employee's work by using reasonable diligence, then the employer can be charged with constructive knowledge.") (citation omitted). "The cases must be rare where prohibited work can be done . . . and knowledge or the consequences of knowledge avoided." Reich v. Dep't. of Conservation & Natural Res., St. of Ala., 28 F.3d 1076, 1082 (11th Cir. 1994) (internal citations and quotation marks omitted).

Accordingly, the defendants should not be granted summary judgment on Ms.

Cini's overtime claim. The issue of how many hours Ms. Cini worked for which she was

not properly compensated should be submitted to the jury.

### c.    The Court's Inherent Power

The defendants also seek to strike the plaintiffs' pleadings in the instant case

pursuant to the Court's inherent power. See Defendants' Motion for Final Summary

Judgment (DE# 35 at 16, 6/9/15). With respect to Ms. Perez, the defendants argue:

> Plaintiff PEREZ can show no support for her claim that her salary was intended to compensate her for only 40 hours a week. For almost four years she accepted that salary irrespective of hours worked. (Stmt. Undisp. Facts #13-14). Perez rejected the raise from $12.00 to $13.00 an hour, and instead chose to earn a salary of $575.00 a week. (Stmt. Undisp. Facts #13). When the $575.00 salary is divided by 40 hours a week, the division yields a rate of $14.375 per hour. Exhibit C p. 93 L11-18. It is axiomatic that when she went on a salary she would receive $14.375 per hour if she had worked forty hours a week. The salary was indisputably intended to compensate her for all hours worked in a given week.
>
> PEREZ motivation for the allegation that the salary was intended to compensate her for only 40 hours a week is not in good faith. She attempts to triple the value of her case requesting an overtime rate of 1½ her regular rate rather than half-time (½) as required by law. 29 C.F.R. 779.113. There is no support for her claim. When she sent an e-mail to GARCIA complaining about the lack of overtime pay, she did not mention that the employment agreement was breached because she was required to work in excess of 40 hours per week. (Stmt. Undisp. Facts #15). PEREZ unreasonably and in bad faith attempts to triple her overtime claim.

Id. at 17-18.

With respect to Ms. Cini's claims, the defendants argue that:

> CINI's overtime claim is also not in good faith. She testified that she submitted her hours for payment and was paid for all the hours which she submitted to the Defendants. She also testified that had she submitted additional hours, those hours would have been paid. CINI has no overtime claim and the court should summarily dismiss her claim for overtime pay

as well as the retaliation claim.

Defendants' Motion for Final Summary Judgment (DE# 35 at 18, 6/9/15).

The Court's inherent power is derived from the Court's need "to manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases." Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991) (internal citations and quotation marks omitted). "The key to unlocking [the C]ourt's inherent power is a finding of bad faith." Barnes v. Dalton, 158 F.3d 1212, 1214 (11th Cir. 1998). "A court should be cautious in exerting its inherent power and 'must comply with the mandates of due process, both in determining that the requisite bad faith exists and in assessing fees.'" Byrne v. Nezhat, 261 F.3d 1075, 1106 (11th Cir. 2001) (citing Chambers, 501 U.S. at  50).

The record evidence in the instant case is insufficient to support a finding of bad faith by the plaintiffs. Many of the cases cited by the defendants in their motion involve the use of fabricated evidence. See, e.g., Vargas v. Peltz, 901 F. Supp. 1572, 1575 (S.D. Fla. 1995) (plaintiff fabricated evidence by producing undergarments which had not yet been manufactured at the time she claimed the defendant had presented them to her); Aoude v. Mobile Oil Corp., 892 F.2d 1115, 116-117 (1st Cir. 1989) (plaintiff created a fake purchase agreement and attached it to his complaint); Pope v. Fed. Express Corp., 138 F.R.D. 675, 680-681 (W.D. Mo. 1990) (plaintiff used a manufactured document to support her sexual harassment claim). The plaintiffs in the instant case have not sought to support their claims based on fabricated evidence. Rather what the defendants refer to as "bad faith" is merely a disagreement in the interpretation of the law.

The defendants seek the ultimate sanction – the complete dismissal of the plaintiffs' claims – based on their belief that the plaintiffs have brought their FLSA claims in bad faith. However, at best, they have shown a difference of opinion between the parties concerning the value of the plaintiffs' claims.

With respect to Ms. Perez' claims, the record shows a legal dispute as to whether she would be entitled to recover damages for unpaid overtime and whether half-time or time-and-a-half is the appropriate calculation. Far from establishing bad fath, there is case law to support Ms. Perez' position that she should be entitled to time-and-a-half for any overtime hours she worked. See, e.g., West v. Verizon Servs. Corp., No. 8:08-cv-1325-T-33MAP, 2011 WL 208314, at *11-12 (M.D. Fla. Jan. 21, 2011) (finding that because the plaintiff's arrangement with her employer did not comport with the fluctuating work week, the plaintiff, a salaried employee, was entitled to recover time-and-a-half for any overtime hours worked if she prevailed at trial); Ramirez v. Urban Outfitters, Inc., No. 6:13-cv-1074-Orl-22GJK, 2014 WL 4090546, at *6 (M.D. Fla. Aug. 15, 2014) (on a motion to dismiss, recognizing that "[t]he Eleventh Circuit has not directly addressed the issue, but the other circuits are split as to whether the appropriate method for calculating unpaid overtime wages in a misclassification case is the half-time method.").

With respect to Ms. Cini's claim, the undersigned has already concluded that a jury should determine: (1) whether the defendants knew or should have known that Ms. Cini was working additional, uncompensated hours and (2) the amount of overtime hours Ms. Cini worked for which she was not compensated. See supra.

43

Because the plaintiffs' claims are sufficient to survive summary judgment, the undersigned cannot conclude that they are frivolous or that they were brought in bad faith. Accordingly, the undersigned respectfully RECOMMENDS that the Court DENY the defendants' request to strike the plaintiffs' pleadings under the Court's inherent power.

## II.    Plaintiffs' Motion for Partial Summary Judgment (DE# 38)

The plaintiffs seek summary judgment on the administrative exemption and the executive/managerial exemption asserted by the defendants as affirmative defenses to Ms. Perez' overtime claim[42] and summary judgment on the issue of the defendants' liability for both plaintiffs overtime claims. For the reasons stated herein, the Court should enter summary judgment in favor of Ms. Perez on the executive/managerial exemption and in favor of Ms. Cini on the issue of FLSA liability for reported overtime hours and allow the remaining issues to proceed to trial.

### a.    Executive/Managerial and Administrative Exemptions

As noted above, the parties dispute whether Ms. Perez worked as a secretary or as an administrative assistant/manager. The Eleventh Circuit has stated that in determining whether the executive/managerial and administrative exemptions apply, the district courts must look beyond the plaintiff's job title. See Gregory v. First Title of Am., Inc., 555 F.3d 1300, 1307 (11th Cir. 2009) (per curiam). To determine whether an individual is an exempt employee, the Court is required to undertake a highly

---

[42] The defendants do not assert that Ms. Cini was subject to an FLSA exemption. See Defendants' Response to Plaintiffs' Statement of Material Facts (DE# 47 at ¶1, 6/29/15).

fact-specific inquiry into the tasks and responsibilities of that employee. Accordingly, the undersigned will address Ms. Perez' job duties below.

The defendants bear the burden of proving that Ms. Perez is an exempt employee. An employer seeking exemption from the overtime pay requirements of the FLSA has the burden of affirmatively showing that each of the essential conditions to an exemption are met. See Brock v. Norman's Country Market, Inc., 835 F.2d 823, 827 (11th Cir. 1988) (citing Foremost Dairies, Inc. v. Wirtz, 381 F.2d 653 (5th Cir. 1967)). The FLSA is to be interpreted liberally. See Josendis v. Wall to Wall Residence Repairs, Inc., 662 F.3d 1292, 1315 n.36 (11th Cir. 2011) (recognizing that courts "liberally construe the FLSA's terms to ensure that coverage extends 'to the furthest reaches consistent with congressional direction.'") (quoting Tony & Susan Alamo Found. v. Sec'y of Labor, 471 U.S. 290, 296 (1985)). As such, exemptions to the FLSA are narrowly construed against the employer. Alvarez Perez v. Sanford-Orlando Kennel Club, Inc., 515 F.3d 1150, 1156 (11th Cir. 2008).

### i)     Executive/Managerial Exemption

The Code of Federal Regulations defines executive employees as those who are:

> (1) Compensated on a salary basis at a rate of not less than $455 per week . . . ;
>
> (2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;
>
> (3) Who customarily and regularly directs the work of two or more other employees; and

> (4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

29 C.F.R. § 541.100(a).

The plaintiffs seek summary judgment on the executive/managerial exemption. As noted above, the defendants bear the burden of establishing the applicability of an exemption. The defendants in their response to the plaintiffs' summary judgment motion do not address the executive/managerial exemption. See Defendants' Response to Plaintiffs' Motion for Partial Summary Judgment and Cross-Motion for Summary Judgment (DE# 46, 6/29/15).[43] For this reason alone, Ms. Perez is entitled to summary judgment in her favor on the defendants' affirmative defense of executive/managerial exemption. See Resolution Trust Corp. v. Dunmar Corp., 43 F.3d 587, 599 (11th Cir.1995) ( "There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment. Rather, the onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned.") (internal citations omitted); Smith v. Quintiles v. Transnational Corp., 509 F. Supp. 2d 1193, 1203 (stating that "because the Plaintiff has failed to support in her responses in opposition [to summary judgment] certain of her allegations of retaliation, the Court will deem those allegations abandoned").

Even if the defendants had not abandoned the executive/managerial exemption,

---

[43] The defendants did raise the combination exemption which is addressed in a separate section.

the record in this case supports summary judgment for Ms. Perez on this exemption.

The only factor met by Ms. Perez in the instant case is the first factor. While the parties

dispute whether Ms. Perez supervised or directed Ms. Cini, the defendants have failed

to point to any record evidence that Ms. Perez "customarily and regularly direct[ed] the

work of two or more other employees" as required by the third factor. 29 C.F.R. §

541.100(a)(3).

Moreover, the record evidence does not show that Ms. Perez' primary duty was

management. See Byers v. Petro Servs., Inc., 2015 WL 2415583, at *2 (S.D. Fla. May

21, 2015) (stating that "[t]he executive exemption only applies if the employee's primary

duty is management."). Other than recommending Ms. Cini, Ms. Perez had no

involvement in interviewing or selecting employees. There is no evidence that Ms.

Perez set the hours or the pay rate of anyone at the firm. She did not recommend

promotions or make changes in job status. She did not address employee complaints,

grievances or discipline anyone at the firm. There is also no evidence that Ms. Perez

was responsible for the safety and security of the firm or that she controlled the firm's

budget[44] or had any involvement in legal compliance measures. 29 C.F.R. § 541.102.

The fourth factor is also not met. The undisputed evidence is that Ms. Perez had

no power to hire, fire or promote employees. See Deposition of Frank Martin (DE# 47-2

at 21, 6/29/15); Affidavit of Yenisey Perez (DE# 39-2 at ¶¶9-10, 6/11/15); Deposition of

---

[44] While there is evidence that Ms. Perez collected payments from clients, submitted payroll information to the accounting firm and printed and distributed payroll checks, there is no evidence that Ms. Perez had any involvement in setting the budget for the firm.

Anastasia M. Garcia (DE# 39-5 at 37, 6/11/15). While Ms. Perez recommended Ms.

Cini to work at the law firm, the undersigned finds that this lone recommendation is

insufficient. The defendants still interviewed Ms. Cini and there is no record evidence

that Ms. Perez' personnel recommendations were given particular weight. See Pinilla v.

Northwings Accessories Corp., No. 07-21564-CIV, 2007 WL 3378532, at *3 (S.D. Fla.

Nov. 13, 2007) (applying executive exemption where "plaintiff's suggestions and

recommendations as to personnel decisions were indeed given particular weight."). For

all these reasons, the executive/managerial exemption does not apply to Ms. Perez as

a matter of law.

### ii)      Administrative Exemption

The administrative exemption applies to an employee who is:

(1) Compensat[ed] on a salary or fee basis at a rate of not less than $455
. . . ;

(2) Whose primary duty is the performance of office or non-manual work
directly related to the management or general business operations of the
employer or the employer's customers; and

(3) Whose primary duty includes the exercise of discretion and
independent judgment with respect to matters of significance.

29 C.F.R. § 541.200(a).

As with the executive/managerial exemption, it is undisputed that Ms. Perez

meets the first factor. With respect to the second factor, the "[p]laintiff's primary duty

must relate to 'management or general business operations' . . . . This means that the

type of work performed by [the p]laintiff must directly relate to assisting with the running

or servicing of the business 'as distinguished, for example, from working on a

manufacturing production line or selling a product in a retail or service establishment.'" Mendoza v. Discount C.V. Joint Rack & Pinion Rebuilding, Inc., No. 13-24081-CIV, 2015 WL 1810596, at *7 (S.D. Fla. Apr. 21, 2015) (quoting 29 C.F.R. § 541.201(a)). In considering the third factor, "the less authority an employee has to make an independent choice free from immediate supervision, the more likely it becomes that the employee does not exercise the necessary discretion and independent judgment." Marin v. LFH Acquisition Corp., No. 12-21071-Civ, 2013 WL 85209, at *3 (S.D. Fla. Jan. 7, 2013).

The plaintiffs argue that the administrative exemption does not apply to Ms. Perez as a matter of law. According to Ms. Perez, her primary duties consisted of routine, secretarial work under the constant direction of the defendants. See Plaintiffs' for Motion for Partial Summary Judgment (DE# 38 at 7, 6/11/15). Ms. Perez testified that she was required to consult with Ms. Garcia on scheduling conflicts and the collection of money from clients. Id. Ms. Garcia would have to approve payment plans and Ms. Perez had no authority to make recommendations in collection matters. Id. Ms. Perez also presented evidence that her job responsibilities included performing personal errands for Ms. Garcia or her father and that her bookkeeping duties were done under the direction of the defendants and the defendants' accountant. Id. The plaintiffs further note that Ms. Perez never "implement[ed] any administrative or other company policies and was never given any special projects [or] special assignments." Id. at 8-9. According to Ms. Perez, Ms. Garcia ultimately determined the firm's health insurance policy. Id. at 9-10.

In their response in opposition to the plaintiffs' summary judgment motion, the

defendants cite to the following as evidence that Ms. Perez qualifies for the

administrative exemption:

> It is undisputed that PEREZ ran the office by herself when GARCIA was
> out. Her duties are outlined in the Affidavit of GARCIA; she was the
> administrative assistant to GARCIA. PEREZ would do payroll for the office
> employees, was in charge of keeping track of the hours worked by CINI;
> she was responsible of keeping inventory; she supervised and trained the
> assistants that worked in the office; she worked out payment plans for
> clients; was in charge of collection of fees and costs owed to the office;
> billed clients at the end of the month; solely dealt with the building
> manager; dealt with the bank on behalf of the Law Firm; had the password
> for online banking; made wire transfers; processed credit card payments;
> used the office credit card to make payments; reimbursed office
> employees for charges incurred by them; selected office
> equipment and computer software; selected the health insurance
> company used by the office, dealt with the health insurance company;
> gathered financial information and gave it to the accountant to ensure
> payment of taxes and fees to governmental entities; was in charge of
> accounts receivables and payment of office expenses; solely dealt with
> the computer technician; had the password for and used QuickBooks; set
> up and arranged the filing system for files.

Defendants' Response to Plaintiffs' Motion for Partial Summary Judgment and Cross-

Motion for Summary Judgment (DE# 46 at 4, 6/29/15).

Genuine issues of material fact preclude summary judgment in Ms. Perez' favor

concerning the administrative exemption. See Eldredge v. EDCare Mgmt., Inc., Nos.

13-61373-Civ, 12-61984, 2013 WL 6169217, at *4 (S.D. Fla. Nov. 22, 2013) (denying

summary judgment on the administrative exemption where "[t]he record [wa]s replete

with [the] types of factual disputes about what [the plaintiff]'s job was, what her role with

the company was, and what level of decision making authority she actually had."). Here,

the parties dispute what Ms. Perez' job functions were and the extent to which she

exercised discretion and independent judgment. For instance, the defendants present testimony that Ms. Perez "ran the office by herself" when Ms. Garcia was out, whereas Ms. Perez presents testimony that she was required to consult with Ms. Garcia on most decisions. According to Ms. Perez, she needed to ask Ms. Garcia before re-ordering stationery and before calling the computer technician. Ms. Perez testified that she would only contact the building manager concerning issues raised by Ms. Garcia. The parties also dispute whether Ms. Perez had the authority to contest invoices submitted to the firm and whether she could approve the firm's health insurance.

The amount of discretion Ms. Perez had in collecting payments from clients is sharply disputed. According to the defendants, Ms. Perez had full discretion to approve payment plans from clients. The plaintiffs maintain that Ms. Perez could not negotiate payment plans with clients and Ms. Garcia had to approve such plans. Ms. Perez also testified that her payroll responsibilities were limited. She would submit payroll information to the accountant and would merely print out the checks from QuickBooks after the accountant calculated the paycheck amount. The plaintiffs further dispute that Ms. Perez was responsible for keeping track of Ms. Cini's hours. Rather, the plaintiffs have presented evidence that Ms. Cini would report her hours to Ms. Perez and that Ms. Perez would in turn provide this information to the accountant. Ms. Perez has also presented evidence that she did not supervise or direct Ms. Cini's work.

In sum, the record evidence reflects genuine issues of material fact precluding summary judgment on the administrative exemption.

### iii)    Combination Exemption

"[T]he regulations promulgated pursuant to the FLSA recognize that an employee may also be exempt from the FLSA's overtime compensation requirements if the employee's primary duty includes a combination of work that qualifies under two or more of the exemptions listed in § 213." Talbott v. Lakeview Ctr., Inc., No. 3:06cv378/MCR/MD, 2008 WL 4525012, at *8 (N.D. Fla. Sept. 30, 2008). The plaintiffs did not move for summary judgment on the combination exemption. The combination exemption was raised in the defendants' response to the plaintiffs' motion for summary judgment. See Defendants' Response to Plaintiffs' Motion for Partial Summary Judgment and Cross-Motion for Summary Judgment (DE# 46 at 4-5, 6/29/15). The undersigned has already determined that the defendants' attempt to assert a second motion for summary judgment in their response in opposition to the plaintiffs' summary judgment motion was improper and untimely. See Order (DE# 51, 6/30/15).

### b.    Overtime Liability under the FLSA

Ms. Perez is not entitled to summary judgment on the issue of FLSA liability because there are genuine issues of material fact concerning whether the administrative exemption applies.

The defendants are not asserting any exemptions against Ms. Cini. They also admit that Ms. Cini worked at least some overtime hours for which she was not paid time-and-half as reflected in her payroll and time records. The parties have also stipulated that the defendants were Ms. Cini's FLSA employers. Accordingly, liability against the defendants has been established with respect to Ms. Cini's claim for unpaid

overtime <u>for the hours which she reported</u>. However, Ms. Cini is also seeking to recover hours which she did not report to the defendants. Ms. Cini has presented record evidence that the hours she submitted did not accurately reflect all of the hours she worked and has presented, at the very least, a genuine issue of material fact concerning whether Ms. Garcia knew or should have known that Ms. Cini was working in excess of her reported hours.[45] Therefore, the issue of whether the defendants had actual or constructive knowledge of Ms. Cini's unreported hours and the amount of Ms. Cini's unreported hours should be submitted to the jury.

In sum, the Court should enter summary judgment in favor of Ms. Perez on the executive/managerial exemption and in favor of Ms. Cini on the issue of overtime liability and damages with respect to her <u>reported</u> hours. Ms. Perez' overtime claim and Ms. Cini's claim for unreported hours should be submitted to the jury for the reasons stated herein.

## <u>RECOMMENDATION</u>

In accordance with the foregoing, the undersigned respectfully recommends that the Defendants' Motion for Final Summary Judgment (DE# 35, 6/9/15) be **DENIED** and that the Plaintiffs' Motion for Partial Summary Judgment (DE# 38, 6/11/15) be

---

[45] Ms. Garcia filed an affidavit wherein she attested that she had no knowledge of any hours worked by Ms. Cini beyond those reported to Ms. Perez. <u>See</u> Affidavit of Anastasia M. Garcia (DE# 47-1 at ¶23, 6/29/15). Ms. Cini attested in her own affidavit that she worked additional, unreported hours for which she was not paid and provided reasons why Ms. Garcia knew or should have known Ms. Cini was working additional uncompensated hours. <u>See</u> Affidavit of Cintia Cini (DE# 39-3 at ¶5, 6/11/15); <u>see also</u>, <u>supra</u>. Accordingly, at the very least, there is a genuine issue of material fact concerning whether Ms. Garcia knew or should have known about Ms. Cini's unreported hours.

**GRANTED in part and DENIED in part**.

The parties have fourteen (14) days from the date of receipt of this Report and Recommendation within which to serve and file written objections, if any, with the Honorable Federico A. Moreno, United States District Court Judge. Failure to file objections timely shall bar the parties from attacking on appeal the factual findings contained herein. See LoConte v. Dugger, 847 F.2d 745 (11th Cir. 1988); RTC v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993).

RESPECTFULLY SUBMITTED at the United States Courthouse, Miami, Florida this **14th** day of July, 2015.

_____
JOHN J. O'SULLIVAN
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
United States District Judge Moreno
All Counsel of Record